110

SANDWICH MANUFACTURING COMPANY v. JOSEPH E. KRAKE.[1]

October 22, 1896.

Nos. 10,136—(124).

**Supplementary Proceedings—Wages of City Employé.**

The creditors of a fireman cannot, by proceedings supplementary to execution, reach the wages due him from a municipal corporation for services as such fireman. It is against public policy to permit such legal proceedings to intervene so as to prevent the payment to the fireman himself of the wages due him for services so rendered.

Appeal by defendant from an order of the district court for Hennepin county, Smith, J., ordering the treasurer of the city of Minneapolis to deliver to plaintiff's attorneys certain moneys and that in case of nonpayment a receiver in supplementary proceedings be appointed. Reversed.

*Christensen & Goebel*, for appellant.

*George E. La Clair*, *H. D. Stocker*, and *H. D. Stocker, Jr.*, for respondent.

BUCK, J. The plaintiff recovered a judgment against the defendant for the sum of $248.45, on certain promissory notes. Subsequently an execution was issued, and returned unsatisfied. On February 25, 1896, an order in supplementary proceedings was issued; and it appears that Krake, the judgment debtor, was in the employ of the city of Minneapolis as a member of the fire department, and that there was due him as wages the sum of $55 from said city over and above all exemption provided by law. Thereupon the trial court ordered that said sum be applied upon the judgment, and that the city treasurer of the city of Minneapolis turn over and deliver to the plaintiff's attorneys the said sum to be applied towards the satisfaction of the judgment rendered in the case. From the order so made, the defendant appeals.

As to whether the defendant, as a fireman or assistant engineer in the fire department of said city, as he appears to be, is technically an "officer," within the strict meaning of that term, we need not con-

[1] Reported in 68 N. W. 606.

sider. If he was an officer, the rule laid down in Roeller v. Ames, 33 Minn. 132, 22 N. W. 177, would be directly in point, to the effect that the salary of a municipal officer due him from the corporation cannot be reached by proceedings supplementary to execution by the creditors of the officer. This was placed upon the ground that public policy forbids that any legal proceedings upon the part of creditors should be allowed to intervene so as to directly or indirectly interfere with the payment of the salary of a public officer directly to himself. In that case it is further stated: [2]

"The reason assigned for this is, in substance, that municipal corporations are auxiliary to the state government; that their officers are public servants, employed to perform public duties; that the public have a right to fill these offices by the selection of the most suitable men; that these officers are usually dependent on their salaries for the support of themselves and families; that the efficiency of their services, or even their remaining in the public service, may depend upon the prompt payment of their salaries, and the certainty that they will receive them when due. Hence, if creditors can step in by any legal proceedings, and prevent the payment of salaries directly to the officers in person, and divert the money to the satisfaction of their claims, the public service would suffer by impairing its efficiency, and perhaps depriving the public of the service of men whom it would be desired to retain. This is not an exemption in favor of the officer, but a rule for the protection of the public. It will be observed that the doctrine rests upon an entirely different reason from that assigned for exempting municipal corporations from garnishment, and is entirely independent of the question whether the corporation or its officers are made parties to the proceedings."

Upon principle, there is no reason why the salary or wages due from a municipal corporation to its fireman should be subject to be reached by supplementary proceedings, and the salary of an officer be exempt. Testing the right of a fireman to have his wages or salary exempt in such cases, we find that the duty to be performed is one in which the object sought is the protection of property and human life. It is a matter of public notoriety and common knowledge that in recent years, in our large cities, great numbers of buildings are erected, several stories in height, and the lives of their occupants greatly endangered by the difficulty in attempting to escape in c㌾ses of fire. The fire departments of our cities have there-

[2] At page 133.

fore become an important branch of the governmental municipal departments, and the services so performed are a public service for the general welfare of the people. Hence the individual who prepares and fits himself as an efficient fireman and enters upon the discharge of his duties, and who watches and holds himself in readiness for the coming enemy,—fire,—and labors to stop its ravages, is engaged in a public employment, as much so as though he was a sworn public officer, wearing the badge of official authority. This position is also one of great hardship and personal danger, and so important is it regarded in the city where the defendant resides and is acting as fireman that he is required to take an oath to support the constitution and well and faithfully perform the duties of fireman, before entering upon the discharge of his duties. The great calamity which befell the city of Chicago a few years ago by reason of a terrible conflagration, which destroyed a large part of the city, is a notable instance of the necessity of an efficient fire department. The destruction of property and great loss of human life by the recent ravages of fire in our own state constitute a sufficient warning that all our fire departments should be made as efficient as can reasonably be possible. Why, then, should not the services of a fireman be deemed as important and as much of a public employment as those of a police or other municipal officer?

Usually, the fireman and his family are dependent upon his wages for support. Promptness and certainty in the payment of these wages may therefore be an important element in securing efficient service of the fireman, and his wages should not be diverted from the payment to him personally, but should be exempt from such supplementary proceedings as were instituted in this case. Various acts of the legislature, such as the exemption from taxation of fire engines and implements used for the extinguishment of fires, and of buildings used exclusively for the safe-keeping thereof, are in line with this policy. It is said that cities should only employ men who are honest enough to pay their debts, but misfortune may overtake the best of men, as it did the defendant in the case at bar; and while the valuable library of the lawyer, as well as a large amount of property of other various classes of people, are exempt from execution, we think it a judicious policy that the fireman, who is protecting the property of the general public as well as endangered human life,

should not have his wages diverted from the support of himself and family by supplementary proceedings or levy under execution.

An expression used in the opinion in the case of Roeller v. Ames, supra, to the effect that the court was not inclined to extend the application of this doctrine beyond the salaries of public officers properly so called,[3] is relied upon by the respondent's counsel in support of a different rule than here laid down. The only question in that case was whether the salary of the mayor of the city of Minneapolis could be reached by proceedings supplementary to execution, and it was held that it could not. The office of mayor of a city is purely a public office. As the question here was not there involved, the phrase there used must be deemed as obiter, and not controlling in this case.

The order of the trial court is reversed.